O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **KANWALJIT SINGH HUNDAL,** | ) | NO. EDCV 08-543-CAS (MAN) |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND ORDER DISMISSING |
| | ) | |
| v. | ) | FIRST AMENDED COMPLAINT WITH LEAVE |
| | ) | |
| | ) | TO AMEND |
| **H. LACKNER, et al.,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

On April 21, 2008, plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").[1]  On April 20, 2009, the United States Magistrate Judge to whom this case formerly was referred screened the Complaint pursuant to the screening provisions of the Prison Litigation Reform Act of 1995 ("PLRA") and dismissed it with leave to amend.  On May 6, 2009, plaintiff filed a First Amended Complaint.

Pursuant to the provisions of the PLRA, Congress has mandated that

---

[1] Plaintiff initially filed the Complaint in the United States District Court for the Northern District of California, which transferred it to this judicial district.

courts perform an initial screening of civil actions brought by prisoners with respect to prison conditions and/or which seek redress from a governmental entity or officer or employee of a governmental entity. This Court "shall" dismiss such a civil action brought by a prisoner before service of process if the Court concludes that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks relief against a defendant who is immune from suit. 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).

In screening a *pro se* complaint, the Court must construe it liberally and must afford the plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). Leave to amend should be granted if it appears that the plaintiff can correct the defects of his complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); *see also* Karim-Panahi, 839 F. 2d at 623 (*pro se* litigant must be given leave to amend complaint unless it is absolutely clear that its deficiencies cannot be cured by amendment); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)(same).

**ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

Plaintiff is incarcerated at the Chuckawalla Valley State Prison ("Chuckawalla"). (First Amended Complaint at 2.) He has sued the following Chuckawalla officials: Warden Salazar; Associate Warden Ollison; Associate Warden Abbs, Facility Captain Hughes; Correctional Counselor Leonard; Inmate Appeals Specialist Bunts; Correctional Lieutenants Sloan, McDougal, and Rettagliata; Correctional Sergeants Browning, Hasz, and Caramella; and Correctional Officers Hein, Knapp,

Caldevas, Ellis, Castillo, and Pruette.  (First Amended Complaint at 3 & 3a-3f.)  In addition, plaintiff has sued the following officials of the California Department of Corrections and Rehabilitation ("CDCR") in Sacramento:  Heidi Lackner, "Director"; and N. Grannis, Chief of the Inmate Appeals Branch.  (*Id.* at 3.)  Plaintiff sues defendants Lackner, Grannis, Abbs, Ollison, Salazar, Hughes, Leonard, Bunts, Sloan, McDougal, and Rettagliata in their individual and official capacities, and defendants Browning, Hasz, Carmella, Hein, Knapp, Caldevas, Ellis, Castillo, and Pruette solely in their individual capacities.  (*Id.* at 1, 3-3f.)

Plaintiff is a Sikh.  (First Amended Complaint ¶ 1.)  California regulations provide that an inmate may not have facial hair longer than half an inch.  Cal. Code Regs. tit. 15, § 3062(h).  Plaintiff's beard exceeds that length.  (First Amended Complaint ¶¶ 14, 17.)  On March 22, 2007, plaintiff was issued a "CDC 128A" "chrono" ordering him to cut his beard.  (*Id.* at ¶ 4, Ex. D.)  Plaintiff refused, citing religious reasons.  (First Amended Complaint ¶ 4.)  He received another "CDC 128A" chrono, as well as "CDC 115" rules violations report.  (*Id.* at ¶¶ 5-9, 22-25, Exs. D, E, F, G, I.).  Plaintiff was found guilty of violating Section 3062(h) and was assessed a loss of privileges and a credit forfeiture.  (First Amended Complaint ¶¶ 5-9, Exs. F, G, H, I.)  He filed grievances seeking a religious exemption from the grooming regulation and restoration of his credits and privileges, but his grievances were denied or rejected for procedural reasons.  (First Amended Complaint ¶¶ 29-33, 36, Ex. M, N, O, P, Q, R.)

Plaintiff alleges that the Sikh religion prohibits him from cutting

3

his beard, and thus, he has refused to cut it. (First Amended Complaint ¶¶ 13-15, 27.) He complains that defendants are discriminating against him, because other prison officials have allowed at least one other inmate to keep his beard for religious reasons. (*Id.* at ¶ 21, Ex. W.)

Plaintiff further complains that defendant Pruette took his typewriter and fan, and defendant Rettagliata found him guilty of a disciplinary violation for "being somewhere he was not." (First Amended Complaint ¶¶ 10-12, 28-35, Exs. J, L.) Plaintiff's grievance regarding the confiscation of his typewriter and fan was partially granted, but only after 110 days had passed. (First Amended Complaint ¶ 10, 34, Ex. K.) Plaintiff contends that these actions constituted further harassment for his adherence to the tenets of his religion. (First Amended Complaint ¶¶ 34, 35.)

Plaintiff asserts claims under the free exercise of religion clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (First Amended Complaint at 4.) He also asserts an equal protection claim and due process claims based on one of his disciplinary proceedings and the deprivation of his property. (*Id.* at ¶¶ 20, 39, 41.) He seeks damages as well as injunctive and declaratory relief directing defendants to: expunge his disciplinary conviction; restore his credits and privileges; restore his prior classification status; and release him from segregation. (*Id.* at ¶¶ 38-42.)

///
///
///

**DISCUSSION**

I. **PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF HIS FIRST AMENDMENT RIGHT TO FREE EXERCISE OF RELIGION.**

A prison inmate retains a First Amendment right to freely exercise his religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987); Cruz v. Beto, 405 U.S. 319, 322 n.2, 92 S. Ct. 1079, 1081 n.2 (1972). However, inmates' First Amendment rights are limited by the loss of freedom intrinsic to incarceration and by the penological objectives of the institution. O'Lone, 482 U.S. at 348, 107 S. Ct. at 2404. Thus, an inmate pursuing a Section 1983 claim for violation of his First Amendment free exercise rights must show that defendants burdened the practice of his religion without any justification reasonably related to legitimate penological interests. Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir.2008). Under Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254 (1987), courts weigh four factors when determining whether a regulation is reasonably related to legitimate penological interests: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the regulation is an "exaggerated response to prison concerns." *Id.* at 89-90, 107 S. Ct. at 2561-62 (*internal quotation marks omitted*).

In this case, plaintiff's First Amendment claims are foreclosed by the Ninth Circuit's decisions in <u>Friedman v. State of Arizona</u>, 912 F.2d 328 (9th Cir. 1990), and <u>Henderson v. Terhune</u>, 379 F.3d 709 (9th Cir. 2004). In <u>Friedman</u>, the Ninth Circuit held that an Arizona prison regulation prohibiting facial hair did not restrict the First Amendment free exercise rights of orthodox Jewish inmates, because it was reasonably related to a legitimate penological interest in the rapid and accurate identification of inmates. <u>Friedman</u>, 912 F.2d at 332. In <u>Henderson</u>, the Ninth Circuit upheld a California prison regulation restricting the length of male inmates' hair against a Native American prisoner's First Amendment challenge. <u>Henderson</u>, 379 F.3d at 711. The Ninth Circuit held that the hair length regulation was reasonably related to the prison's legitimate penological interests in preventing inmates from changing their appearance quickly, hiding contraband in their hair, displaying gang-related hair styles, and maintaining a safe and hygienic environment. *Id*. at 713-14.

Although the Ninth Circuit subsequently found the same hair length regulation to be violative of RLUIPA, it did not retreat from its conclusion that the regulation did not violate the First Amendment. *See* <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 998 & n.8 (9th Cir. 2005) (explaining that the decision did not conflict with <u>Henderson</u>, because <u>Henderson</u> involved a First Amendment challenge, not an RLUIPA challenge); *see also* <u>Paulino v. Todd</u>, 2009 WL 2241566, *1 (9th Cir., July 28, 2009)("the state's regulations on the length of inmates' hair are constitutional"); <u>Von Staich v. Hamlet</u>, 2007 WL 3001726, *2 (9th Cir., Oct. 16, 2007)("Prison hair-length and beard regulations do not

1  violate the First Amendment.").[2]

Accordingly, plaintiff's First Amendment free exercise of religion rights were not violated when defendants failed to grant him a religious exemption from the prison regulation restricting the permissible length of an inmate's beard, and disciplined him for his refusal to comply with the regulation. Plaintiff's First Amendment claim, therefore, must be dismissed.

**II. PLAINTIFF'S RLUIPA CLAIM WITHSTANDS DISMISSAL TO THE EXTENT IT SEEKS DECLARATORY AND INJUNCTIVE RELIEF AGAINST DEFENDANTS SALAZAR, OLLISON, ABBS, HUGHES, LEONARD, SLOAN, AND MCDOUGAL IN THEIR OFFICIAL CAPACITIES.**

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." RLUIPA, § 3(a), 42 U.S.C. § 2000cc-1(a). Thus, RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under Turner." Shakur, 514 F.3d at 888.

---

[2] The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

The Ninth Circuit addressed the applicability of RLUIPA to a California regulation restricting the length of male inmates' hair in Warsoldier.³ The plaintiff, an American Indian inmate, refused to cut his hair due to his religious beliefs, and was punished by confinement to his cell, imposition of additional duty hours, and revocation of certain privileges. Warsoldier, 418 F.3d at 991-92. The Ninth Circuit held that the prison policy imposed a substantial burden on the inmate's exercise of his religion, and the policy was not the least restrictive means to achieve the state's compelling interest in maintaining prison safety and security.⁴ Id. at 996-1000.

In the light of Warsoldier, the Court finds that, at this early stage of the action, plaintiff has stated a claim under RLUIPA. However, the Court must address the contours of plaintiff's RLUIPA claims. Specifically, the Court must address whether plaintiff can assert RLUIPA claims against defendants in their individual capacities, whether he can assert RLUIPA claims for damages, and whether his allegations are sufficient to support RLUIPA claims against all defendants.

---

³ This was the same regulation that the Ninth Circuit had upheld against a First Amendment challenge in Henderson, *supra*.

⁴ In response to Warsoldier, the CDCR adopted emergency changes to its grooming regulations, which became final on July 27, 2006. *See* Cal. Code Regs. tit. 15, § 3062, and related history. The new grooming regulations allow inmates to grow their hair to any length, so long as the hair does not extend over the eyebrows, cover the inmate's face, or pose any risk to health or safety, and also allow them to grow facial hair, including "short beards," so long as the facial hair does not "extend more than one half inch in length outward from the face." (Cal. Code of Regs tit. 15, § 3062 (e) and (h) as amended.) Here, plaintiff is challenging the last restriction.

RLUIPA creates a cause of action for suits against "a government," which is defined, in pertinent part, as a "State, county, municipality, or other governmental entity," and "branch, department, agency, instrumentality, *or official* of an entity listed in [the previous clause]," and "*any other person* acting under color of state law." 42 U.S.C. § 2000cc-5(4) (*emphasis added*). Despite this language, the Circuit Courts that have considered the issue have concluded that RLUIPA does not create a cause of action for damages against officials in their individual capacity. *See* Rendelman v. Rouse, 569 F.3d 182, 187-89 (4th Cir. 2009); Nelson v. Miller, 570 F.3d 868, 886-89 (7th Cir. 2009); Sossamon v. Lone Star State of Texas, 560 F.3d 316, 327-29 (5th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1271-75 (11th Cir. 2007). These Circuit Courts have reasoned that Congress enacted RLUIPA pursuant to the Spending Clause and did not indicate with sufficient clarity an intent to condition the states' receipt of federal funds on the creation of an individual capacity action for damages; moreover, a contrary reading of the statute would raise serious constitutional concerns about the extent of Congress's authority under the Spending Clause  *See* Rendelman, 569 F.3d at 187-89; Nelson, 570 F.3d at 887-89; Sossamon, 560 F.3d at 327-29; Smith, 502 F.3d at 1271-75.

The Ninth Circuit has not yet addressed this issue.[5] However, the

---

[5] However, the Ninth Circuit has issued unpublished decisions that, by affirming defendants' entitlement to qualified immunity, implicitly assume the existence of an individual capacity RLUIPA claim for damages. *See* Campbell v. Alameida, 295 Fed. Appx. 130, 131, 2008 WL 4415151, *1 (9th Cir., Sept. 8, 2008); Von Staich, 2007 WL 3001726, at *2.

9

Ninth Circuit has upheld the constitutionality of RLUIPA as an enactment under the Spending Clause. *See* Mayweathers v. Newland, 314 F.3d 1062, 1066-67 (9th Cir. 2002). Thus, the Court adopts the reasoning of the Fourth, Fifth, Seventh, and Eleventh Circuits in the above cases and concludes that plaintiff cannot assert an RLUIPA claim for damages against defendants in their individual capacities. *See* Harris v. Schriro, 2009 WL 2450423, * 2-3 (D. Ariz., Aug. 11, 2009)(dismissing individual capacity claims for damages under RLUIPA based on out-of-circuit authority). Plaintiff's RLUIPA claims for damages against defendants in their individual capacities, therefore, must be dismissed.[6]

The next question is whether plaintiff can assert an RLUIPA claim for damages against defendants in their official capacities. "[A] suit against a state official in his or her official capacity is . . . no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989). The Eleventh Amendment prohibits federal jurisdiction over claims against a state unless the state has consented to suit or Congress has abrogated its immunity. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100, 104 S. Ct. 900, 107-08 (1984). The state's consent to suit, however, must be unequivocally expressed. *Id.*

A state can waive its sovereign immunity by accepting federal funds when the funding statute manifests a clear intent to condition

---

[6] The Court will not consider whether plaintiff could assert an individual capacity RLUIPA claim for injunctive relief, because the injunctive relief plaintiff seeks is properly asserted against defendants in their official capacities.

participation in the funded programs on a waiver of Eleventh Amendment immunity. Clark v. State of California, 123 F.3d 1267, 1271 (9th Cir. 1997); *see also* Atascadero State Hospital v. Scanlon, 473 U.S. 234, 247, 105 S. Ct. 3142, 3149-50 (1985). Section 3 of RLUIPA provides that prisoners who suffer an RLUIPA violation may obtain "appropriate relief against a government." 42 U.S.C. §§ 2000cc-2(a). There is a split of authority between the Eleventh Circuit, on the one hand, and the Third, Fourth, Fifth, Sixth, and Seventh Circuits, on the other hand, regarding whether, under this provision, a state's receipt of prison funds constitutes a waiver of its sovereign immunity from suits seeking monetary damages. *Compare* Smith, 502 F.3d at 1275-76 & n.12 (Eleventh Amendment does not bar RLUIPA official capacity claims for damages; statutory language conditioning receipt of federal funds on adherence to statute and providing for "appropriate relief" for violation waives immunity); *with* Nelson, 570 F.3d at 884-85 (Eleventh Amendment bars RLUIPA official capacity claims for damages, because the "appropriate relief" provision is not sufficiently unequivocal to waive sovereign immunity); Cardinal v. Metrish, 564 F.3d 794, 800-801 (6th Cir. 2009)(same); Sossamon, 560 F.3d at 329-30 (same); Madison v. Virginia, 474 F.3d 118, 1230-32 (4th Cir. 2006)(same). The Ninth Circuit has not yet addressed this issue, but at least two district courts in this Circuit have concluded that RLUIPA does not effectuate a waiver of California's sovereign immunity from money damages. *See* Williams v. Beltran, 569 F. Supp. 2d 1057, 1058-65 (C.D. Cal. 2008); Sokolsky v. Voss, 2009 WL 2230871, *5-*6 (E.D. Cal., July 24, 2009); *see also* Harris, 2009 WL 2450423, at *6-*7 (RLUIPA does not waive Arizona's Eleventh Amendment immunity from money damages).

1    For the same reasons as discussed in the above cases, the Court
2 concludes that California has not waived its sovereign immunity from
3 suit for money damages under RLUIPA by accepting federal prison funds.
4 Plaintiff's official capacity claims for damages, therefore, are barred
5 by the Eleventh Amendment.

7    Plaintiff, however, seeks not only damages but also injunctive
8 relief.  Plaintiff may pursue official capacity claims against
9 defendants for prospective injunctive relief.  *See* Ex parte Young, 209
10 U.S. 123, 28 S. Ct. 441 (1908)(Eleventh Amendment does not bar official
11 capacity claims against state officials for prospective injunctive
12 relief to end a continuing violation of federal law); *see* Mayweathers,
13 314 F.3d at 1069-70 (RLUIPA claims for injunctive relief fall within Ex
14 Parte Young exception).

16    Plaintiff has sued defendants Lackner, Grannis, Salazar, Ollison,
17 Salazar, Abbs, Hughes, Leonard, Bunts, Sloan, McDougal, and Rettagliata
18 in their official capacities.  However, plaintiff has not alleged any
19 connection between defendants Lackner and Rettagliata and the refusal
20 to grant him a religious exception from the beard length restrictions.
21 *See* Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)(liability under
22 Section 1983 requires that defendant does an affirmative act,
23 participates in another's affirmative act, or omits to perform an act
24 which he or she is legally required to do that causes the complained-of
25 deprivation).  Moreover, as discussed below, plaintiff's claims against
26 defendants Grannis and Bunts are impermissibly based solely on their
27 participation in the administrative appeal process.  Thus, plaintiff has
28 not alleged a basis for asserting his RLUIPA claims against defendants

Lackner, Grannis, Bunts, and Rettagliata, and his claims against them must be dismissed. Plaintiff's RLUIPA claims for injunctive relief against defendants Salazar, Ollison, Abbs, Hughes, Leonard, Sloan, and McDougal, in their official capacities, withstand screening and plaintiff may reallege them in his amended complaint.

### III. **PLAINTIFF FAILS TO STATE AN EQUAL PROTECTION CLAIM.**

Plaintiff contends that defendants have discriminated against him, because other inmates have received religious exemptions from having to cut their beards. (First Amended Complaint ¶ 21.)

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985). The threshold allegation is that plaintiff was similarly situated to other inmates who received different treatment. *See* Fraley v. Bureau of Prisons, 1 F.3d 924, 926 (9th Cir. 1993). Plaintiff must also "plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998).

According to Exhibit X to the First Amended Complaint, plaintiff's equal protection claim stems from a January 15, 2007 "chrono" issued by officials at Mule Creek State Prison to an Asatru/Odinist inmate, which allowed that inmate to keep his beard. (First Amended Complaint, Ex. X.) Plaintiff is a Chuckawalla inmate challenging acts of Chuckawalla

officials. Plaintiff has not alleged that defendants have granted religious exemptions from the beard restrictions to other Chuckawalla inmates.

Accordingly, plaintiff fails to state an Equal Protection Claim.

**IV. PLAINTIFF CANNOT ASSERT CLAIMS BASED ON THE PROCESSING OF HIS GRIEVANCES.**

Plaintiff alleges that Inmate Appeals Coordinator Bunts and Warden Salazar denied or "screened out" his grievances. (First Amended Complaint ¶¶ 29-33.) He further complains that Captain Hughes took 110 days to respond to a grievance, even though she ultimately partially granted it. (*Id.* at ¶ 34.) The First Amended Complaint does not contain any factual allegations about defendant Grannis, Chief of the Inmate Appeals Branch, although plaintiff presumably is suing her for her handling of his third level grievances. (*See id.*, Exs. N, O.)

A prisoner cannot state a claim based on the handling of his grievances. *See* Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)("inmates lack a separate constitutional entitlement to a specific prison grievance procedure"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("[t]here is no legitimate claim of entitlement to a grievance procedure"); *see also* Wise v. Washington State Dept. of Corrections, 244 Fed. Appx. 106, 108, 2007 WL 1745223, *1 (9th Cir. 2007)("an inmate has no due process rights regarding the proper handling of grievances"), *cert. denied*, 128 S. Ct. 1733 (2008); Wright v. Shapirshteyn, 2009 WL 361951, *3 (E.D. Cal., Feb. 12, 2009)(noting that "where a defendant's

14

only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983")(citing <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999)).

Accordingly, plaintiff's claims against defendants Grannis, Bunts, Salazar, and Hughes based on their handling of his grievances must be dismissed.

**V.     PLAINTIFF FAILS TO STATE A DUE PROCESS CLAIM BASED ON THE LOSS OF HIS TYPEWRITER AND FAN.**

Plaintiff alleges that Correctional Officer Pruette confiscated his typewriter and fan, in violation of his due process rights. (First Amended Complaint ¶¶ 10, 28.)

A negligent or intentional deprivation of property under color of state law does not constitute a violation of the procedural requirements of the Due Process Clause if state law affords plaintiff a meaningful post-deprivation remedy. <u>Hudson v. Palmer</u>, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527, 543-44, 101 S. Ct. 1908, 1917 (1981), *overruled on other grounds by* <u>Daniels v. Williams</u>, 474 U.S. 327, 106 S. Ct. 662 (1986); <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994). The Ninth Circuit has held that California law provides an adequate post-deprivation remedy for property deprivations caused by public officials. <u>Barnett</u>, 31 F.3d at 816; *see* California Government Code §§ 900 *et seq.*

1  Accordingly, plaintiff's due process claim based on the deprivation
2  of his typewriter and fan must be dismissed.

**VI. PLAINTIFF FAILS TO STATE A CLAIM BASED ON HIS JUNE 5, 2007 DISCIPLINARY CONVICTION.**

Plaintiff complains that, on June 5, 2007, defendant Rettagliata found him guilty of "being somewhere he was not." (First Amended Complaint ¶ 35.) Although the basis of plaintiff's claim is not clear, he characterizes the disciplinary conviction as harassment and points to inconsistencies in the evidence. (*Id.*, Ex. L.)

Plaintiff was found guilty of "disobeying written orders" and was assessed a credit forfeiture of 30 days. (First Amended Complaint, Ex. L.) In Heck v. Humphrey, 512 U.S. 477, 114 S. CT. 2364 (1994), the Supreme Court held that a plaintiff may not bring a Section 1983 action for damages based on "actions whose unlawfulness would render a conviction or sentence invalid" when his conviction or sentence has not yet been reversed, expunged, or otherwise invalidated. *Id.* at 486-87, 114 S. Ct. at 2372. The Supreme Court instructed district courts faced with prisoner Section 1983 suits for damages to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487, 114 S. Ct. at 2372. The same principle applies when a prisoner raises Section 1983 claims challenging the validity of a disciplinary conviction resulting in the loss of good-time credits. Edwards v.

Balisok, 520 U.S. 641, 644-46, 117 S. Ct. 1584, 1587-88 (1997)(holding that claims alleging procedural defects and bias by a hearing officer at disciplinary hearing were not cognizable under Heck, because they implied the invalidity of a credit forfeiture imposed at hearing).

Thus, an inmate cannot challenge his disciplinary proceedings in a Section 1983 action if the asserted defect, if established, would "necessarily imply the invalidity of the deprivation of his good-time credits." Edwards, 520 U.S. at 646, 117 S. Ct. at 1588. Plaintiff's contention that his disciplinary conviction was unsupported by evidence at the hearing would imply the invalidity of his credit forfeiture. *See* Superintendent v. Hill, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 2774 (1985)(disciplinary conviction must be supported by "some evidence"). His claim, therefore, is barred by Heck and Balisok.

**CONCLUSION**

For the foregoing reasons, the First Amended Complaint is dismissed with leave to amend. If plaintiff wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a Second Amended Complaint that attempts to cure the defects in the Complaint described herein. The Second Amended Complaint, if any, shall be complete in and of itself. It shall not refer in any manner to the First Amended Complaint or the original Complaint. **Plaintiff may not add new claims or new defendants without obtaining prior leave of court. Fed. R. Civ. P. 15(a).**

**Plaintiff is explicitly cautioned that failure to timely file a**

**Second Amended Complaint, or failure to correct the deficiencies described herein, may result in a recommendation that this action be dismissed pursuant to Fed. R. Civ. P. 41(b).**

DATED: September 15, 2009

                          */s/ Margaret A. Nagle*
                          MARGARET A. NAGLE
                    UNITED STATES MAGISTRATE JUDGE